Argued June 18, affirmed July 29, 1959
# LENCHITSKY *v.* H. J. SANDBERG CO.
### 343 P. 2d 523

*James C. Dezendorf* argued the cause for appellant. On the briefs were Koerner, Young, McColloch & Dezendorf and Marshall C. Cheney, Jr., Portland.

*William C. Martin* argued the cause for respondent. On the brief were Dusenbery, Martin, Schwab, Beatty & Parks, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Millard, Justices.

WARNER, J.

This is an appeal in an action brought by plain-

tiff, Lenchitsky, a former employee of defendant, H. J. Sandberg Co., a corporation, engaged in the sale of furnaces and other heating and air-conditioning equipment, to recover for alleged commissions earned on certain furnace sales which he made prior to the termination of his employment, and in the amount of $5,599.98, for which the jury returned its verdict.

Immediately prior to July 1, 1953, plaintiff had been paid a fixed salary of $100 a week by the defendant company, coupled with a voluntary biannual bonus upon considerations known only to the company.

On that date, the company ushered in a new plan of compensation for its salesmen. Under this orally made employment agreement, the salesmen, including plaintiff, were to be compensated under a different formula. Plaintiff contends that the base figure was reached by subtracting from the sales price of the furnaces *sold* 15 per cent of that figure for overhead expense, plus an additional deduction representing the cost of labor, materials and other direct costs incident to the installation of each furnace sold. The company agrees with the formula as represented by plaintiff, but insists that the initial, base figure is gathered only from sales procured by plaintiff that are installed and *"billed"* by the company during the period of his employment. In short, the prime issue is whether the plaintiff can claim commissions on sales made by him for furnaces installed and billed to the purchaser after the termination of his employment.

The parties litigant agree on the percentages to be applied for the determination of the commissions earned; that is, plaintiff's compensation was to be computed after the deduction of 15 per cent and in-

stallation costs above mentioned, at the rate of 52 per cent for the first $10,000, 35 per cent for the next $10,000, and 20 per cent for all amounts in excess of $20,000.

Plaintiff's employment was terminated by defendant on July 22, 1954. There is no controversy relating to payment during the fiscal year of July 1, 1953, to June 30, 1954. Nor is there any issue that the check which plaintiff received in the amount of $565.35 (to which we will make later reference) a few days after the termination of his employment, is not a correct calculation of his commissions on those sales of furnaces made by him which were installed and *billed* by the company prior to July 22, 1954.

We note that plaintiff is only seeking recovery on his sales billed subsequent to the termination of his employment. The single question is whether the plaintiff, under this contract of employment, can recover commissions based on sales procured by him subsequent to July 1, 1954, and prior to the termination of his employment (July 22, 1954), but which were not billed to customers by defendant until *after the termination of his employment*. The issue was submitted to the jury under instructions to which no exceptions were taken.

■■ For its first assignment, defendant company alleges error in the court's denial of its motion for a directed verdict upon the grounds that the evidence shows, as a matter of law: that the compensation formula in dispute applied not to sales procured by plaintiff and billed after his term of employment, but only to billings of sales made while plaintiff was still in the employ of the company; and that an accord and satisfaction resulted on August 5, 1954, as the consequence of the tender by the company and acceptance by

plaintiff of the check for $565.35 on the company's account. We cannot agree to either proposition.

The governing principle was expressed in the opinion on rehearing in *Flaherty v. Bookhultz*, 207 Or 462, 481, 482, 291 P2d 221, 297 P2d 856 (1956), where the facts were substantially similar to those in the case at bar (207 Or, supra, p 474-479). There, we approved and applied the following statement of the rule found in 3 CJS 88, Agency § 187:

"* * * Accordingly, an agent selling goods on commission is entitled to a commission on goods sold by him during the continuance of the agency, although the goods were not delivered or paid for, or even where the orders were not received by the principal, until after the termination of the relationship. If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency."

See, also, *Zinn v. Ex-Cell-O Corporation*, 24 Cal2d 290, 149 P2d 177, 180; *Dibble v. Dimick*, 143 NY 549, 38 NE 724, 725, cited in *Flaherty v. Bookhultz*, supra, at p 481.

In response to defendant's contention in the Flaherty case that the plaintiff salesman had forfeited his right to sales made but not completed during the term of his employment, we also cited at p 482 and applied the following from 56 CJS 522, Master and Servant § 92:

"Ordinarily an employee does not forfeit his right to commissions, already earned under his contract, by the termination of his employment, as by his discharge, *unless the contract of employment provides otherwise* or provides for the

performance of services as an entirety, or unless there is a recognized custom in the business that such right will terminate with the employment. * * *" (Emphasis ours.)

See, also, *Grattan v. Societa, etc.,* 151 NYS2d 875, 885; *J. & B. Motors, Inc. v. Margolis,* 75 Ariz 392, 257 P2d 588, 38 ALR2d 946.

In support of its argument that plaintiff was not entitled to commissions on sales procured during his employment but billed subsequent to the termination of that relationship, the company cites and quotes from the following authorities: *O'Brien v. Cuno Engineering Corp.,* 87 NYS2d 497, 498 (1949); *In re Burnbrier's Estate,* 92 NYS2d 653 (1949); *Ullmann v. May,* 147 Ohio 468, 72 NE2d 63 (1947); *Hiller v. Submarine Signal Co.,* 325 Mass 546, 91 NE2d 667 (1950); *Rabe v. Rudolph Wurlitzer Co.,* 43 F Sup 416 (D Fla 1942); *Parkway Motor Co., Inc. v. Charles,* 39 F2d 292 (CA DC). There can be no quarrel with the pronouncements of these courts in light of the contracts of employment there involved. But they all reveal written arrangements with specific provisions excluding compensation after the termination of the employment. Here, they are inapplicable because the record does not disclose that the instant employment contract specifically excluded post-employment payment based upon post-employment billings. Stated conversely, it does not show conclusively that the agreement called solely for the earning of commissions on sales billed before the termination of his employment.

Plaintiff had no duties with regard to installation, nor was he involved with the collections or bookkeeping. Upon installation, the contract was ready for billing. A sales ledger listed plaintiff's separate sales. The amount of the sale and the costs of material

and labor were entered under the heading of "billings." The "billing" as employed by the company seems to have been a convenient device from whence to readily make the calculations for the amount of commissions due as it carried on its face all the amounts deductible from the sales price except the arbitrary 15 per cent overhead costs. Unlike the circumstances found in most of the cases cited by defendant, the payment of the salesman's commission was not dependent upon payment of the amounts for which company's customer was billed. Because compensation is computable on billings does not conclusively establish that compensation is forthcoming only when the sale is billed prior to the termination of employment; it does not follow necessarily that plaintiff is not entitled to payment on sales billed after his discharge. We note, too, that plaintiff's relative rank in the company as a salesman was based on total sales without regard to billings but solely predicated upon sales made though not billed.

Notwithstanding the company's contention respecting the proof of the terms of the employment agreement (and which, as we have noted, does not include any evidence of a provision concluding interest in commissions on "billings" made after termination), there is evidence to support plaintiff's theory that commissions were forthcoming on sales billed after his termination. Where the evidence is conflicting respecting the terms of the agreement, the submission of the question to the jury was appropriate.

Defendant company also urges that plaintiff's reception of the check of $565.35 from the company for billings through July, 1954, constituted an accord and satisfaction of any amount due and sought in this action.

An accord and satisfaction is a type of executed, substituted contract, which extinguishes a previous obligation. *Steiner, Inc. v. Hill,* 191 Or 391, 401, 226 P2d 307, 230 P2d 537; *Warrenton Lumber Co. v. Smith,* 117 Or 530, 539, 245 P 313. It is an affirmative defense to the original obligation with the burden of proving all its elements resting upon the one seeking to invoke its effect. 6 Corbin, Contracts, 103 § 1280; 1 CJS 558, Accord and Satisfaction § 6; 1 Am Jur 260, Accord and Satisfaction § 77.

This court has twice approved the following statement from 1 CJ 529, Accord and Satisfaction § 16, as evidencing its concept of what is necessary to constitute a valid accord and satisfaction:

"To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; *that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner.* It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction." (Emphasis ours.)

*Weaver v. Williams,* 211 Or 668, 680, 317 P2d 1108; *Brady v. Selberg,* 154 Or 477, 479, 60 P2d 1104.

The entire testimony relating to the subject of accord is derived from the direct and cross-examination of the plaintiff and direct examination of Mr.

Partridge, vice president and manager of the defendant company.

Under all definitions, one of the constituent elements of a valid accord and satisfaction is the necessity for an offer and acceptance supported by a sufficient consideration. Here, the evidence indicates that the tender of defendant's check was not accompanied by any conditions, either oral or in writing, on the check or elsewhere, that acceptance by the payee was tantamount to a satisfaction of all claims asserted by plaintiff against the company. Our search of the record reveals that the most that was said by Mr. Partridge when he delivered the previously prepared check to the plaintiff, and, indeed the most that is claimed by the defendant, was embodied in substantially the same phraseology each time repeated, but no more, i.e.: "He [Partridge] gave me a check and told me that was all I was to get" (Tr 61); "He said that was it, that was all that I was going to get and not to expect any more" (Tr 62); "He handed me that check and told me that was all that I was going to get, period" (Tr 61). Defendant offered no testimony in contradiction. Mr. Partridge never denied the words imputed to him when he tendered the check to Mr. Lenchitsky. Nor was there any evidence to indicate that the tender was accompanied by any conditions or representations which would legally effectuate an accord and satisfaction if accepted by the plaintiff. The jury might well find what was said by Mr. Partridge was merely an arbitrary declaration of intent on the part of the company to refuse to pay more on plaintiff's claim than it had previously determined to pay.

Referring again to the essentials of a valid accord and satisfaction as approved by this court in *Weaver v. Williams,* supra, at p 680, and *Brady v. Selberg,*

supra, at p 479, it might appear to the jury that the tender of the check to plaintiff was wanting in the first essential there referred to, namely, "that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand." It was in the province of the triers to say whether a peremptory and unconditional declaration not to pay beyond the amount of the check delivered, constituted an accomplished accord and satisfaction.

If they found contrary to defendant's theory, as they apparently did, then plaintiff's acceptance of the check did not, under the circumstances, militate against his right to recover for any balances due after crediting the amount thereof to the company's account with him.

In *State v. Funk,* 105 Or 134, 146, 154, 199 P 592, 209 P 113, we find:

> "In all contracts, whether of accord and satisfaction or the compromise and settlement of a disputed claim, or otherwise, it is essential to the validity of the contract that the minds of the parties have met in agreement with each other. There must be an *aggregatio mentium,* as otherwise the contract is not complete.  *  *  *"

To the same effect in *Ingram v. Sauset,* 121 Wash 444, 209 P 699, 700, 34 ALR 1031, the court observes:

> " 'The mere fact that the creditor receives less than the amount of his claim, with knowledge that the debtor claims to be indebted to him only to the extent of the payment made, does not necessarily establish an accord and satisfaction.  *  *  *' "

See, also, *Sanders v. Standard Wheel Co.,* 151 Ky 257, 151 SW 674, 676; *Lovekin v. Fairbanks, Morse & Co.,* 282 Pa 100, 127 A 450, 451; *Pidcock v. Williams,* 214 Mo App 248, 259 SW 899, 902.

We are of the opinion that the record fails to show with the degree of clarity or conclusiveness insisted upon by the defendant that the payment which it tendered to the plaintiff was as a matter of law accepted by the plaintiff with the understanding and agreement by plaintiff, express or implied, that he was foregoing all claim to compensation for the orders he had placed in the basket in the month of July, 1954, and for which no billings had been made.

Where the negotiations surrounding an alleged accord and satisfaction are doubtful and permit of conflicting deductions, they are to be resolved by the trier of fact. *Knight v. Wolpert,* 172 Ark 937, 290 SW 933, 934; *Zabawa v. Osman,* 202 Iowa 561, 210 NW 602, 603; 6 Corbin, supra, 95 § 1277; 1 Am Jur, supra, 261 § 78. See, also, *Clay v. Rossi,* 62 Ida 140, 108 P2d 506, 510. We find that submission of this issue to the jury was proper. No error was committed in overruling defendant's motion for a directed verdict.

■ The company asserts for its second assignment of error an abuse of discretion by the trial court in denying its motion for judgment notwithstanding the verdict or for a new trial. ORS 19.010, which enumerates appealable judgments, decrees and orders from which an appeal may be taken, does not include an order denying a motion for a judgment n.o.v. In the ordinary case, where a motion for a judgment n.o.v. is denied, an appeal can only be taken from the judgment as entered. In this respect, an order denying a motion for a judgment n.o.v. does not differ from an order denying a motion for a new trial. *Hillman v. North. Wasco Co. PUD,* 213 Or 264, 298, 323 P2d 664; 4 CJS 395, Appeal and Error § 125; 2 Am Jur 912, Appeal and Error § 103.

It has been repeatedly held by this court that the assignment of error based upon a ruling denying a motion for a new trial is a nullity and that no exception can be taken to an order overruling such motion nor can the order be considered on appeal unless it submits something which occurred after the close of the trial such as new evidence discovered after trial, misconduct of a juror of which the party was unaware after the discharge of the jury, or a flagrant abuse of discretion upon the part of the trial judge. Nothing is here shown under this assignment which brings the defendant within any of said exceptions to the rule. *Benson v. Birch,* 139 Or 459, 466, 10 P2d 1050, and cases there cited. *Klemgard and Dumas v. Wade Seed Company,* 217 Or 409, 342 P2d 757, decided this date. We find the second assignment without merit.

For its final assignment, the company complains of the court's refusal to give the following requested instruction:

"If, under the evidence and instructions of this Court, you find for the plaintiff the measure of damages will be the amount due under the agreement, and I instruct you it cannot be more than $1,932.62."

The instruction, if given, would have foreclosed consideration by the jury of plaintiff's theory as to the amount of damages to which he claimed to have been entitled.

The company represented that since plaintiff did not work a full year, but only one month, July, 1955, the formula defined in their employment contract must be divided by 12 when applying it to the base figure of $14,565.04 as urged by plaintiff and supported by the evidence.

It was plaintiff's position that the contractural

formula must be applied without reference to a fractional division. Accordingly, plaintiff claimed $6,797.76, less $1,197.78 paid by defendant. This was the amount of his prayer and the amount of the ensuing verdict, $5,599.98.

The trial judge outlined the various theories of damages to the jury. They were instructed as to the alleged amounts under each theory. Where the evidence is not clear or conflicting on such material matters, all theories supported by competent evidence must be submitted to the jury. *Fiore v. Ladd,* 25 Or 423, 424, 36 P 572 (1894); *Severy v. Myrmo,* 186 Or 611, 614, 207 P2d 151 (construing OCLA 5-308, now ORS 17.255 (1)). The trial court did not err in refusing the requested instruction.

The judgment is affirmed.