Argued February 7, affirmed June 21, 1973

PELLETT, *Respondent, v.* SIMPSON TIMBER
COMPANY, *Appellant.*

511 P2d 357

*Jonathan A. Ater,* Portland, argued the cause for appellant. With him on the briefs were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland.

*Walter J. Cosgrave,* Portland, argued the cause for respondent. With him on the brief were Cosgrave & Kester and Frank H. Lagesen, Portland.

O'CONNELL, C. J.

This is an action to recover damages resulting from defendant's alleged breach of an employment contract. The jury returned a verdict for plaintiff in the amount of $13,614.88. Defendant appeals.

Defendant Simpson Timber Company hired plaintiff in March of 1969 under a three-year contract. According to that agreement plaintiff's "assignment" was with Bosques E Industrial Madereras (BIMA), a Chilean company devoted to the production of alerce, a tree grown primarily in southern Chile. BIMA was partially owned by Simpson. On May 1, 1969, plaintiff reported with his family to Contao, the BIMA company town, and commenced work as "Woods Superintendent."

During 1970 defendant determined that its investment in BIMA was unsound, and in August of that year plaintiff and other North American employees were informed that an agency of the Chilean government would take over active management of BIMA. Plaintiff was requested and agreed to remain

in Contao through the logging season, until April of 1971.

Meanwhile, social and political unrest had spread to Contao following the election of Salvatore Allende as President of Chile. On or about September 10, 1970, plaintiff conversed by telephone with Furman Moseley, the President of BIMA and Vice President of Simpson, who had hired plaintiff. Testimony adduced at trial was conflicting as to what each party said. Plaintiff testified that Moseley, speaking with reference to plaintiff and his family, stated that "under the circumstances, I think it is wise if you all get out of there." Moseley, on the other hand, testified that plaintiff asked to leave Contao, and that he, Moseley, replied that plaintiff was free to leave if he felt in danger.

In early October of 1970, plaintiff left Contao and met with Moseley in Santiago. At that time Moseley gave plaintiff an additional brief assignment in South America, and they agreed to meet again in Seattle on November 3, 1970. In Seattle, Moseley informed plaintiff that defendant had no positions available for plaintiff. Moseley testified that it was subsequently agreed that plaintiff "would stay on Simpson's payroll until the thirty-first of March, 1971 or until such time as he found a job, whichever occurred earlier." Plaintiff was finally removed from defendant's payroll on March 31, 1971.

■ The factual issue in the case is whether plaintiff asked to be relieved of his contractual obligation or was willing to remain in Contao but was excused by Moseley from completing his assignment. It is defendant's contention that the jury was not given the opportunity to properly resolve this issue because the trial court gave a misleading instruction.

■ Defendant submitted several instructions to the court, among which was the following:

"If you find that Mr. Pellett abandoned this employment *for any reason* while Simpson continued to make the employment available to him, then Mr. Pellett anticipatorily breached his contract with Simpson and Simpson was justified in terminating his employment" (Emphasis added.)

The trial court modified the foregoing by giving the following instruction:

"If you find that the plaintiff abandoned this employment *unreasonably* while the employment was available to him, then you may find that the plaintiff breached his contract with the defendant and the defendant was justified in terminating the plaintiff's employment." (Emphasis added.)

We think that defendant's requested instruction would have been misleading. Plaintiff's position was not that he was affirmatively ordered to leave Contao, but that Moseley encouraged him to do so. The jury would have been told that while Simpson continued to make the employment available, plaintiff would have breached the contract if he left his employment *for any reason*. The jury could have taken this to mean that the contract would have been breached because, as plaintiff contended, Moseley had excused him from staying on at Contao.

It is likely that this infirmity prompted the trial court to modify defendant's requested instruction. The instruction as given purported to tell the jury that plaintiff was not free to leave his employment unless it was reasonable for him to do so. This could perhaps be taken to mean that plaintiff would not breach his contract if it would not be unreasonable for one in his position to decide to leave a place which

was shaken by civil strife. This might not be a sufficient legal justification for plaintiff's abandonment of his employment, since although it might be reasonable from plaintiff's standpoint, it might not be reasonable from his employer's standpoint. The other meaning which could be given the instruction is that even if plaintiff had reason to leave because of unsettled conditions, it would not be reasonable considering the needs of his employer and therefore would not constitute a legal justification for abandoning his employment. Considering the manner in which the evidence was adduced and the way in which the case was argued, we think that the jury must have understood the instruction in this latter sense.

Throughout his testimony plaintiff insisted that the local disturbances in Contao were not the reason for his departure. Defendant, in cross-examining plaintiff, attempted to develop the contrary impression. Since, in the development of this evidence, both plaintiff and defendant assumed that plaintiff would not be legally justified in leaving simply because of the unrest, the jury must have understood that it would have been unreasonable within the meaning of the instruction for plaintiff to leave under such circumstances. We hold that the instruction was not fatally defective.

■ Defendant also contends that the trial court erred in striking its defense of accord and satisfaction. In support of this contention defendant points to testimony relating to discussions between plaintiff and Moseley followed by payments to plaintiff. It is argued that the jury could have concluded from this evidence that the parties reached an agreement resolving the dispute between them, thus constituting an

accord and satisfaction. The evidence relied upon by defendant is equally consistent with plaintiff's contention that defendant, in making these payments, was doing only that which it was obligated to do under the employment contract. We have held that to constitute an accord and satisfaction the intention to discharge the pre-existing contractual obligation "shall be made known to the creditor in some unmistakable manner."[1] There was no evidence in the present case showing that the payments made to plaintiff were made with the intention of extinguishing defendant's obligation under the employment contract. Therefore, the trial court properly withdrew this defense from the jury's consideration.

The judgment of the trial court is affirmed.

---

[1] Harding v. Bell, 265 Or 202, 209, 508 P2d 216 (1973); Lenchitsky v. H. J. Sandberg Co., 217 Or 483, 490, 343 P2d 523, 526 (1959); Weaver et al v. Williams, 211 Or 668, 680, 317 P2d 1108, 1114 (1957); Brady v. Selberg, 154 Or 477, 479-80, 60 P2d 1104, 1105 (1936).