Argued and submitted June 26, 2012, reversed and remanded October 30, 2013

Lena HAMLIN,
*Plaintiff-Appellant,*
*v.*

THE WILDERVILLE CEMETERY ASSOCIATION,
an Oregon non-profit corporation,
*Defendant-Respondent.*

Josephine County Circuit Court
09CV0809; A147517

313 P3d 360

Staci L. Palin argued the cause for appellant. With her on the briefs was Hornecker, Cowling, Hassen & Heysell, LLP.

James R. Dole argued the cause for respondent. With him on the brief was Dole, Sorenson, Ransom & Ferguson, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Plaintiff brought several claims against defendant, a nonprofit corporation that operates Wilderville Cemetery, relating to defendant's burial of her late husband, and now appeals the trial court's award of summary judgment to defendant. Plaintiff and her husband, Donald (collectively, the Hamlins), had purchased a plot in defendant's cemetery, and the lawsuit involves claims regarding Donald's burial in a spot different from the spot plaintiff requested, which she believed was in the plot they had purchased but which defendant represented was outside the boundaries of that plot. In the context of communications about plaintiff's concerns regarding Donald's burial, defendant deeded a gravesite in an adjacent plot to plaintiff's son; part of the lawsuit involves the implications of that transfer.

Plaintiff sued defendant on a number of theories related to Donald's burial, seeking equitable relief and damages. Defendant moved for summary judgment, which the trial court granted after determining that there was no genuine issue of material fact as to whether defendant's conveyance of a gravesite to plaintiff's son constituted an accord and satisfaction of the parties' dispute. The trial court also ruled that no genuine issue of material fact existed as to whether the cemetery was operating within its statutory and legal authority in this case by managing the placement of gravesites within a plot. The trial court dismissed all of plaintiff's claims, and plaintiff appeals. On appeal, we conclude that there was a genuine issue of material fact as to whether the conveyance of the gravesite to plaintiff's son functioned as an accord and satisfaction. In addition, we conclude that the trial court's ruling that the cemetery was acting within its statutory and legal authority in this case was not a proper basis for summary judgment. Accordingly, we reverse and remand.

Summary judgment is appropriate if there is no genuine issue of material fact for trial and the moving party is entitled to prevail as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based on the summary judgment record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that

is the subject of the motion for summary judgment." *Id.* To determine whether a genuine issue of material fact exists in this case, we review the summary judgment record in the light most favorable to plaintiff—the nonmoving party—and draw all reasonable inferences in her favor. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We state the facts consistently with that standard.

In Wilderville Cemetery, ordinary cemetery plots contain 12 four-by-eight foot gravesites, organized in two rows of six gravesites. The gravesites within each plot are generally labeled with the letters A through L. Gravesites A through F are located in the "top row," and gravesites G through L are in the "bottom row." In 1976, plaintiff and Donald purchased a single gravesite in plot 124 for burying the cremated remains of their son, Dennis. There is no record of that purchase, but Dennis's remains were buried in a small wooden box somewhere on the border of what are now considered gravesites B and C in plot 124. The next year, the Hamlins purchased the "upper half" of plot 124 for $200. In 1994, the Hamlins purchased the remainder of plot 124 for $300 to ensure that their family members could be buried together. The Hamlins received a cemetery deed from defendant that reflected that they were deeded the "entire plot." Based on representations by defendant that a standard plot contains 12 gravesites and discussions between plaintiff and defendant's representatives in the past, the Hamlins understood plot 124 to encompass 12 standard gravesites.

In 2006, plaintiff's son, Terry, purchased gravesites J, K, and L in plot 123, which borders plot 124 on its "left side." Terry and Donald placed a brick border around plot 124 in the summer of 2007. Shortly thereafter, defendant's president, Grant, contacted Terry to inform him that there was a problem with the brick border in the "lower right" portion of plot 124 (bordering plot 125), but Grant did not otherwise complain about the border around the rest of the plot. Donald died in November 2007, and on the day before his funeral, Terry marked a burial site in plot 124 immediately inside the brick border shared with plot 123. That evening, Grant informed Terry that she had moved the burial site for Donald closer to plot 125 (away from the border with

plot 123) because the location marked by Terry was outside the boundaries of plot 124 and was in a location designated by defendant as a walkway between plots 123 and 124. Terry met with Grant and other members of defendant's board on the morning of Donald's funeral. Grant agreed to move Donald's burial site closer to the border with plot 123, but still not to the location that Terry had originally designated. Plaintiff was upset because she believed that the spot marked by Grant would not allow her to be buried next to Donald because there was limited space between the gravesite and the location of Dennis's remains. The family held the funeral later that day, and Donald was buried in the spot that Grant had designated.

Underlying the dispute over the location of Donald's burial site was a general disagreement about the physical parameters of plot 124. Defendant contended that plot 124 contained nine gravesites, and that the Hamlins' payments for plot 124 reflected that they had only purchased nine gravesites. According to defendant, when plaintiff and Donald purchased the "top row" of plot 124 in 1977 for $200, the standard price per gravesite was $40. In 1994, when the Hamlins purchased the "bottom half" of plot 124 for $300, the standard price per gravesite was $75. Accordingly, the amounts paid by the Hamlins indicated that they purchased nine gravesites (five in 1977 and four in 1994). Defendant also asserted that even if the cemetery's map did not depict a pathway between plots 123 and 124, one had always been allowed in that location. Therefore, in defendant's view, plot 124 had always contained nine gravesites. Plaintiff, noting that the cemetery's map never designated a pathway between the plots, and relying on her understanding that she and Donald had purchased 12 gravesites in plot 124, believed that the location that Terry had originally chosen for Donald's burial was within the boundaries of plot 124.

Several months after Donald was buried, plaintiff attended defendant's board meeting. At the close of that meeting, she asked Grant for a copy of the cemetery map. When she saw that the map did not depict a pathway between plots 123 and 124, plaintiff began to cry, and told Grant that she was upset with how Donald's burial was handled. According to plaintiff, Grant asked how she could make it

better, to which plaintiff replied that defendant could move Donald's casket to the spot that Terry had originally designated. At that point, Grant pulled out a "cemetery card" and had plaintiff write her name next to Donald's burial spot and told her that there would be sufficient room for her gravesite, which made plaintiff feel better. Grant refused to move Donald's casket, but asked plaintiff "several times" if she could "gift" plaintiff a gravesite in plot 123. Plaintiff said, "No," but when she "saw that the conversation was going nowhere," she threw her arms in the air and stated, "Deed that to Terry." Shortly thereafter, Terry received a cemetery deed from defendant conveying gravesite 123F to him "in trade for 124E." Defendant's internal records have a notation on the cemetery card for plot 123 that indicates that gravesite 123F was a "gift."

Plaintiff later filed this action, bringing claims for (1) breach of contract, (2) intentional infliction of emotional distress (IIED), (3) negligence, (4) violation of ORS 97.360, (5) negligent misrepresentation, (6) breach of fiduciary duty, and (7) breach of warranty. With the exception of $100,000 sought as damages for the intentional infliction of emotional distress claim, plaintiff sought "equitable relief requiring defendant to move [Donald's] casket from its current location and rebury it immediately next to the boundary line of" plot numbers 123 and 124.

Plaintiff based her breach of contract claim on her allegation that, contrary to the terms of the Hamlins' purchase of plot 124, defendant refused to bury Donald in the gravesite that the family had chosen in plot 124. Her IIED claim asserted that defendant's refusal to bury Donald in the family's chosen location was an "extraordinary transgression of the bounds of socially tolerable conduct" that resulted in emotional distress to plaintiff. Her negligence claim alleged that defendant negligently carried out its duty under ORS 97.310 to survey and divide the cemetery into "blocks, plots, avenues, or walks *** and make a substantial map of the plot showing them with descriptive names or numbers." As for plaintiff's claim under ORS 97.360, plaintiff asserted that that statute requires an order of the cemetery director and consent of the plot owner to resurvey and alter the shape and size of a cemetery plot. She claimed that,

in this case, defendant altered the shape of plot 124 without plaintiff's consent by inserting a pathway. Plaintiff's negligent misrepresentation claim maintained that plaintiff reasonably relied on past representations by defendant's representatives that plot 124 contained 12 gravesites and that the plot contained the location marked by Terry for Donald's burial. Further, plaintiff asserted that defendant breached the warranty in the cemetery deed that she could use plot 124 to bury her relatives as she intended.

Defendant moved for summary judgment, stressing that when plaintiff agreed to accept gravesite 123F (as deeded to Terry), the parties reached an accord and satisfaction of plaintiff's claims. Specifically, defendant asserted that there was no genuine issue of material fact that defendant offered gravesite 123F in settlement of plaintiff's claims, and that plaintiff accepted the gravesite in full satisfaction of her dispute with defendant. Plaintiff objected, maintaining that whether defendant's offer of gravesite 123F was unmistakably intended as a satisfaction of the parties' dispute was itself a disputed fact. Plaintiff also asserted that there was an issue of fact as to whether she was under duress when she told Grant to "deed [gravesite 123F] to Terry" which, according to plaintiff, would invalidate her assent to an accord and satisfaction.

Defendant also argued in its summary judgment motion that, as an independent basis for summary judgment, it was entitled to prevail as a matter of law because it had authority under the terms of the cemetery deed and ORS 97.710 to exercise control over the interment of remains in Wilderville Cemetery. In its motion, defendant acknowledged that the parties disputed the boundaries of plot 124, but argued that, regardless, defendant properly prohibited Donald's burial in the location designated by Terry because the Hamlins did not own that location. Plaintiff responded that ORS 97.710 allows defendant to make and enforce certain rules and regulations related to the cemetery, but did not allow defendant to move the desired location of Donald's burial site. Further, plaintiff contended that defendant's authority under ORS 97.710 "has no effect" on plaintiff's claims for IIED, negligence, violation of ORS 97.360, and negligent misrepresentation.

Ultimately, the trial court granted summary judgment, concluding that "the record and undisputed facts clearly show that there was an accord and satisfaction in this case and the court accepts and adopts defendant's arguments with respect to this issue." Further, the court ruled that there was "insufficient evidence that plaintiff suffered from emotional distress such that no objectively reasonable trier of fact could relieve her from her role in the accord and satisfaction." Finally, the trial court concluded that "defendant was operating within its statutory and legal authority in managing the placement of plots and gravesites so as to properly provide access and egress to all cemetery users." The trial court entered a general judgment dismissing plaintiff's claims.

On appeal, the parties generally renew their arguments. Viewing the summary judgment record as we must—in the light most favorable to plaintiff and drawing all reasonable inferences in her favor—we conclude that there were genuine issues of material fact as to whether the conveyance of gravesite 123F was an accord and satisfaction of plaintiff's claims. We also conclude that the trial court improperly dismissed plaintiff's claims on the basis that defendant was operating within its statutory and legal authority under the deed and ORS 97.710.

An accord and satisfaction "is a type of executed, substituted contract, which extinguishes a previous obligation." *Lenchitsky v. H. J. Sandberg Co.*, 217 Or 483, 490, 343 P2d 523 (1959). The defense is made out "when parties to a disputed claim have agreed to resolve their dispute by the tender and acceptance of some substituted performance." *Coover v. G & J Electric*, 285 Or 247, 249-50, 590 P2d 720 (1979). The party seeking to invoke it as an affirmative defense carries the burden of proving all of its elements. *Lenchitsky*, 217 Or at 490.

"'To constitute a valid accord and satisfaction it is * * * essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; *that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner.* It is equally essential that the creditor shall have accepted it

with the intention that is should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.'"

*Id.* (quoting *Weaver v. Williams*, 211 Or 668, 680, 317 P2d 1108 (1957)) (emphasis in original). In general, "[w]here the negotiations surrounding an alleged accord and satisfaction are doubtful and permit of conflicting deductions, they are to be resolved by the trier of fact." *Id.* at 493.

Plaintiff contends that the evidence surrounding the parties' interaction at defendant's board meeting creates a genuine issue of material fact as to whether defendant made known to plaintiff in an unmistakable manner that gravesite 123F was intended to fully satisfy plaintiff's claims. Defendant's general argument in response is that the undisputed facts show that plaintiff accepted gravesite 123F in satisfaction of her dispute and that "there is no explanation for the conveyance other than an accord and satisfaction."

As noted, defendant must prove that it intended the offer of gravesite 123F to fully satisfy its obligation to plaintiff and that it made that intent known to plaintiff in an unmistakable manner. *See Van Riper v. Baker*, 61 Or App 540, 544, 658 P2d 537 (1983). Further, defendant must prove that plaintiff understood that defendant's offer of gravesite 123F was intended to satisfy all of plaintiff's claims. *Reppert v. Plaid Pantries*, 42 Or App 313, 316, 600 P2d 494 (1979). Whether plaintiff had that understanding is a question of fact. *Id.*; *see Coover*, 285 Or at 250-52. However, it is not always necessary to prove intent directly because it can be inferred from the circumstances surrounding the transaction. *Reppert*, 42 Or App at 316 (intent can be inferred by a creditor's acceptance of a payment which he clearly understands was tendered as a settlement).

The circumstances surrounding the transaction in this case create a genuine issue of material fact as to whether defendant clearly communicated to plaintiff that the offer of gravesite 123F was intended to fully satisfy all

of its obligations to plaintiff and thereby resolve all of her claims. As an initial matter, accepting plaintiff's version of what occurred at the meeting, the negotiations were ambiguous enough to permit "conflicting deductions" that should be resolved by the trier of fact. *See Lenchitsky*, 217 Or at 493 (the trier of fact should decide when negotiations surrounding accord and satisfaction are doubtful and permit conflicting deductions). According to plaintiff, after she expressed her displeasure with Donald's burial, Grant offered to "gift" a gravesite in plot 123 and asked, "Will this help?" Plaintiff rebuffed Grant's offer several times until finally, sensing that "the conversation was just going nowhere," plaintiff just "threw up [her] arms and said, 'Deed that to Terry.'"[1]

Grant's use of the term "gift" in these circumstances contradicts defendant's accord-and-satisfaction theory. A gift is commonly understood as "something that is voluntarily transferred by one person to another without compensation." *Webster's Third New Int'l Dictionary* 956 (unabridged ed 2002). Accordingly, plaintiff could infer from Grant's offer to "gift" the gravesite, particularly in the absence of any explicit communication that the gravesite was to satisfy any claim that plaintiff might have against defendant, that defendant did not expect anything, including extinguishment of her claims, in return for the gravesite. Accordingly, the interaction between Grant and plaintiff, as recounted by plaintiff, is enough to create a genuine issue of material fact as to whether defendant's intent to offer the gravesite as satisfaction of plaintiff's claims was made known to plaintiff in "some unmistakable manner." *Lenchitsky*, 217 Or at 490.

Further, there is an additional issue of fact as to whether plaintiff understood defendant to be offering to satisfy *all* of her claims with gravesite 123F. At the time of the board meeting, Grant understood that plaintiff was upset about two related but distinct issues. First, plaintiff disputed that the location marked by Terry was outside the boundaries of plot 124. When Grant gave plaintiff a cemetery

---

[1] Grant's version of the interaction included her recollection that she also said, "Can we put this all behind us now?" and that plaintiff answered, "Yes. Will you put it in Terry's name?" after which Grant and plaintiff hugged. Plaintiff, in her summary judgment reply, included her deposition testimony that this part of the conversation did not occur.

map that did not depict a walkway between plots 123 and 124, plaintiff became upset. Grant understood that plaintiff felt that she had lost a gravesite that she had paid for and that defendant had wrongly refused to bury Donald in the location designated by Terry. Second, Grant was aware that plaintiff was also upset that defendant had chosen a spot for Donald's burial that would preclude plaintiff from being interred next to him. Under the circumstances of the exchange between plaintiff and Grant, a question of fact exists as to whether defendant unmistakably made it known that gravesite 123F was offered with the intent of satisfying all of her claims—that is, plaintiff could have inferred that the gravesite was offered to satisfy her concern about having lost a gravesite, but not her concern about being buried next to Donald. *See, e.g., Coover*, 285 Or at 250 (explaining that "[u]nless the condition of discharge is made clear, the natural assumption is that the creditor has accepted part payment and is entitled to expect additional payment in the future"); *cf. Reppert*, 42 Or App at 316-17 (concluding that, as a matter of law, there is an accord and satisfaction where the debtor delivers a check to the creditor with a note clearly communicating that the check is intended as full satisfaction of a disputed claim and the creditor negotiates the check).

Simply put, the circumstances that surrounded the conveyance of gravesite 123F to Terry contained enough ambiguity to create a factual dispute as to whether defendant made known to plaintiff in "some unmistakable manner" its intention to fully satisfy plaintiff's claims. Accordingly, the trial court erred in granting summary judgment on the basis of accord and satisfaction.

Given that conclusion, we must also address whether the trial court properly dismissed plaintiff's claim on the basis of defendant's theory that the cemetery deed and ORS 97.710 authorized its refusal to bury Donald in the location that Terry had designated.

As noted, the trial court ruled on summary judgment that "the record is clear that [d]efendant was acting within its statutory and legal authority in managing the placement of the plots and gravesites so as to properly provide access and egress to all cemetery users." It is unclear

from the court's ruling whether the court intended that statement to serve as an alternative basis for dismissing all of plaintiff's claims as a matter of law—but any such basis for dismissal was erroneous. The trial court could not dismiss plaintiff's claims on that basis without deciding the underlying factual issue—a matter of disputed fact—as to the physical parameters of plot 124.

To understand the court's ruling, we must examine what was before it on summary judgment. Defendant, in its motion, argued that plaintiff's claims should be dismissed as a matter of law because the terms of the Hamlins' cemetery deed and defendant's general authority under ORS 97.710 authorized defendant to dictate Donald's burial location within plot 124. Generally, ORS 97.710 grants defendant the authority to make and enforce rules and regulations governing the operation of the cemetery.[2] *Bash v. Fir Grove Cemeteries, Co.*, 282 Or 677, 685-86, 581 P2d 75 (1978). Those rules must be reasonable, *Mansker v. Astoria,* 100 Or 435, 455, 198 P 199 (1921), and cannot contravene a statute, *Bash,* 282 Or at 686.

---

[2] ORS 97.710(1) provides that a cemetery authority may make and enforce rules and regulations for:

"(a) The use, care, control, management, restriction and protection of its cemetery;

"(b) Restricting and limiting the use of all property within its cemetery;

"(c) Regulating the uniformity, class and kind of all markers, monuments and other structures within its cemetery;

"(d) Prohibiting the erection of monuments, markers or other structures in or upon any portion of its property;

"(e) Regulating or preventing the erection of monuments, effigies and structures within any portion of the cemetery grounds and for the removal thereof;

"(f) Regulating the care or preventing the introduction of plants or shrubs within such grounds;

"(g) Preventing the interment in any part thereof of a body not entitled to interment therein;

"(h) Preventing the use of burial plots for purposes violative of its restrictions;

"(i) Regulating the conduct of persons and preventing improper assemblages therein; and

"(j) All other purposes deemed necessary by the cemetery authority for the proper conduct of its business and the protection and safeguarding of the premises and the principles, plans and ideals on which the cemetery was organized."

Defendant acknowledged below that the parties still disputed the physical parameters of plot 124—in particular whether it contained nine or 12 gravesites—but contended that plaintiff wanted to bury Donald in an area that defendant considered to be a walkway, not an available gravesite. With that factual underpinning, defendant argued that it could not "permit the interment of remains in areas designated for walkways because it must insure ingress and egress to other burial sites in the cemetery." Accordingly, we understand defendant's argument to the trial court to be that plaintiff could not sustain her claims because defendant was authorized by the terms of the deed and by statute to prohibit plaintiff from burying Donald outside the boundary of plot 124 in a location designated as a pathway.

The fundamental problem with that argument, and the trial court's approval of it, is that it assumed that the factual dispute over the physical parameters of plot 124 had been resolved in defendant's favor. Defendant argued that because plaintiff wanted Donald to be buried outside of her plot in an area that would inhibit ingress and egress, defendant was entitled to refuse that request as a matter of law. That conclusion, however, depended on a determination that the spot designated by Terry was, in fact, outside the boundaries of plot 124. No such factual determination had been made and, indeed, that matter was disputed. Accordingly, it was inappropriate for the trial court to dismiss plaintiff's claims on that legal basis.

It is important to note what defendant did not argue to the trial court. That is, defendant did not present to the trial court the argument that, even if plaintiff were correct about the physical parameters of plot 124, defendant could nevertheless have precluded her from burying Donald at the location that she desired because defendant's authority under ORS 97.710 and the cemetery deed allowed it to prohibit burial in a particular location *within a plot* in order to maintain access within the cemetery. We offer no opinion on that argument, which was not presented to the trial court.[3]

___

[3] Given our conclusion that the trial court erred in dismissing any of plaintiff's claims, we need not resolve plaintiff's argument that, at the very least, defendant's authority under ORS 97.710 and the cemetery deed had "no effect" on

To the extent that defendant makes additional arguments on appeal to support the entry of summary judgment on one or more of plaintiff's claims, they were not made to the trial court and we decline to address them for the first time on appeal. *State v. Wideman*, 203 Or App 359, 364, 124 P3d 1271 (2005).

Reversed and remanded.

---

her claims for IIED, negligence, violation of ORS 97.360, and negligent misrepresentation. However, we note that plaintiff's negligence claim and her claim under ORS 97.360 both involve questions as to whether defendant violated its statutory duties in laying out plot 124, and her IIED and negligent misrepresentation claims were based on allegations of misconduct by defendant's agents. At least at this stage of the proceedings, it is unclear how the defendant's general authority to govern operation of the cemetery would preclude those claims.