Argued and submitted August 13, 2015, reversed and remanded
January 25, 2017

# BUTLER FAMILY LIMITED PARTNERSHIP,
an Oregon limited partnership,
*Plaintiff-Respondent,*

*v.*

# BUTLER BROTHERS, LLC,
an Oregon limited liability company;
and Butler Ranch, Inc.,
an Oregon corporation,
*Defendants,*

*and*

# KNIFE RIVER CORPORATION NORTHWEST,
an Oregon corporation,
*Defendant-Appellant.*

Crook County Circuit Court
12CV0061; A157038

388 P3d 1135

Michael W. Peterkin argued the cause for appellant. With him on the briefs was Peterkin & Associates.

Matthew T. Parks argued the cause for respondent. With him on the brief was Parks & Ratliff, P.C.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DUNCAN, P. J.

This appeal involves a dispute over a restrictive covenant in a lease agreement between defendant and plaintiff's predecessor-in-interest. According to defendant, that covenant unambiguously restricts mining operations on plaintiff's property; whereas, according to plaintiff, the covenant unambiguously does *not* bind plaintiff's parcels. Both parties moved for summary judgment on that question, and the trial court ruled in plaintiff's favor, concluding that the land transferred to plaintiff was never subject to the restrictive covenant. Defendant now appeals the resulting judgment, assigning error to the denial of its motion and the grant of plaintiff's motion. We hold that the record presents genuine issues of material fact that preclude summary judgment in either party's favor, and we therefore reverse and remand for further proceedings.

## I. BACKGROUND

This case is part of a larger dispute involving real property in Crook County that is owned, directly or indirectly, by members of the Butler family. The relevant procedural history, for purposes of this appeal, is largely undisputed. In 2006 or 2007, the Richard L. Butler and Shirley A. Butler Family Trust transferred property to Butler Brothers, LLC (Butler Brothers). Shirley Butler later came to believe that she had been defrauded in that transfer by David Butler, one of the members of Butler Brothers, and a dispute arose over what property had been transferred.

In 2010, in the midst of that dispute, defendant Knife River Corporation Northwest (Knife River) entered into the mining lease with Butler Brothers and Butler Ranch, LLC (Butler Ranch) that is the focus of this appeal. The agreement, which is titled "First Restated Lease Agreement," refers back to an "Original Lease Agreement" that was entered into in 1996 by the parties' respective predecessors-in-interest. The First Restated Lease Agreement (or "2010 Lease") recites that "the parties intend that the Original Lease Agreement, as amended, be replaced and superseded by this Agreement, but that all rights and obligations of the parties up to the effective date of this Agreement be governed by the Original Lease Agreement as amended."

The 2010 Lease, like the Original Lease Agreement, permits Knife River to lease from Butler Brothers and Butler Ranch "the rights to mine rock, sand, gravel and by-products thereof" on part of the land identified as "the Removal Premises." It further permits Knife River to "stockpile materials, process materials, crush rock, operate an asphaltic concrete (hot mix) plant, operate a redi-mix concrete plant, sell materials, and to operate an office and a shop, and for related uses and purposes" on part of the land that is identified as "Operations Premises."

Paragraph 1 of the 2010 Lease, entitled "Leased Premises," is the critical part of the agreement, for purposes of this appeal. That paragraph first identifies the "Removal Premises" and the "Operations Premises" by tax lot.[1] The tax lots correspond to a map attached as an exhibit to the lease.

In addition to identifying the Removal Premises and Operations Premises, paragraph 1 then includes the restrictive covenant at issue here. The paragraph provides, in relevant part:

"The lease of the right to mine rock and sand and gravel and by-products created thereof on the Removal Premises shall be exclusive to the Lessee during the term of this Agreement and any renewal thereof. In addition, *Lessee shall have the exclusive right to mine rock, sand and gravel and by-product created thereof from the balance of Butler Ranch, Inc. and Butler Brothers, LLC land adjacent to the Removal Premises during the term of this lease.*"

(Emphasis added.)

---

[1] The Removal Premises are identified to

"include[] property on portions of the following Tax Lots: All in Township 14 South, Range 14 East, Willamette Meridian, Crook County, Oregon. In Section 16 Tax Lot 601. In Section 15/16 Tax Lot 604. In Section 16 Tax Lot 603 south of the existing road. In Section 16 Tax Lot 101 south of the existing road. In Section 16 Tax Lot 100 shop near existing road. In Section 22 Tax Lot 100 & Section 15 Tax Lot 100 & 101 a 120 acre sand and gravel deposit permitted at one 5 acre increment at a time."

The Operations Premises are identified as

"[a]ll in Township 14 South, Range 14 East, Willamette Meridian, Crook County, Oregon. In Section 16 Tax Lot 603 land south of the existing road. In Section 16 Tax Lot 601 land under the rim. In Section 16 Tax Lot 101 land south of the existing road. In Section 16 Tax Lot 100 the shop near existing road and land east of shop under the hill incline."

At this juncture, it is unnecessary to describe the remaining provisions of the 2010 Lease, other than to note that, although the final paragraph of the 2010 Lease contemplated the recording of a memorandum of lease "in the deed records of the county in which the property is located at the option of Lessee," the parties did not immediately record such a memorandum after executing the 2010 Lease.

In the meantime, members of the Butler family were litigating ownership of their respective parcels, including two parcels ("Parcel 1" and "Parcel 3") that bordered the lots described in the 2010 Lease. In 2011, the Butler family reached a conditional settlement of that property dispute, which would result in ownership of Parcel 1 and Parcel 3 being transferred to the Butler Family Limited Partnership (BFLP), which is the plaintiff in this action. The following diagram shows the rough location of Parcel 1 and Parcel 3 with respect to the Removal Premises described in the 2010 Lease:

After Parcel 1 and Parcel 3 were to be deeded to BFLP, the present dispute arose between Knife River and BFLP over whether the restrictive covenant in the 2010 Lease precluded BFLP from mining on those parcels. BFLP initiated this action on June 4, 2012, seeking, in its first

claim for relief, a declaration that those parcels are not subject to the 2010 Lease. Also on that day, BFLP filed a motion for a temporary restraining order to prevent Knife River from "record[ing] a Memorandum of Lease including the property to be conveyed to [BFLP] without further order of the Court."

Three days later, but before the court ruled on the motion for a temporary restraining order, Knife River recorded a "Memorandum to First Restated Lease Agreement" ("2012 Memorandum"), which identifies, through exhibits, the real property covered by the 2010 Lease. The exhibits contain legal descriptions that encompass Parcel 1 and Parcel 3.

Both Knife River and BFLP then filed cross-motions for partial summary judgment on BFLP's first claim for relief, offering competing understandings of the scope and effect of the 2010 Lease and the 2012 Memorandum. BFLP argued that the 2010 Lease was "personal to the lessors" and, by its express terms, burdened only land owned by Butler Brothers and Butler Ranch, not their successors-in-interest. Knife River, on the other hand, argued that there was no genuine issue of material fact as to whether the restrictive covenant ran with the land, citing another provision of the lease, paragraph 26, which states that "[t]he covenants, conditions, and terms of this Agreement shall extend to and be binding upon and inure to the benefit of the heirs, personal representatives and assigns of the parties."

The trial court ruled in favor of BFLP. The court explained:

"I find that the 2010 First Restated Lease does not, by its express terms, include the land transferred to the Butler Family Limited Partnership (BFLP). There are several reasons for this finding. The lease identifies several tax lots within section 1, but does not reference the tax lots transferred to BFLP. The lease specifically refers to and includes adjacent land to the Removal Premises *owned by Butler Brothers and Butler Ranch Incorporated (BB/BRI).* The restrictive covenant contained in the 2010 lease was a *personal covenant* between Knife River Corporation (KR) and BB/BRI. The lease itself states that the restrictive

covenant shall be binding upon heirs, personal representatives and assigns of the parties. *But it doesn't include the term 'successors,' and restrictive covenants are not favored in law.*

"Therefore, I conclude that there is no genuine issue of material fact relating to whether the land transferred to BFLP was subject to the restrictive covenant in the [2010 Lease]—it was not."

(Emphases added.) The court then entered a limited judgment in BFLP's favor on its first claim for relief.[2]

Knife River now appeals that limited judgment, assigning error to the grant of BFLP's motion for summary judgment and the denial of its cross-motion. Knife River contends, as it did below, that the record permits only one conclusion: that the parties to the 2010 Lease, as clarified by the 2012 Memorandum, intended the restrictive covenant to bind their successors-in-interest. BFLP defends the trial court's reasoning, arguing that the mining restriction was nothing more than a personal covenant on behalf of Butler Brothers and Butler Ranch, and that any contrary suggestion in the 2012 Memorandum should be disregarded because that memorandum was recorded during this dispute and after BFLP sought a temporary restraining order.

## II.  LAW

### A.  *Standard of Review*

In an appeal arising from cross-motions for summary judgment, the granting of one motion and the denial of the other are both reviewable. *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). In each case, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. *Hamlin v. Wilderville Cemetery Association*, 259 Or App 161, 163, 313 P3d 360 (2013) (citing ORCP 47 C). In determining whether a genuine issue of material fact exists, we, like

---

[2] The parties also moved for summary judgment on other theories and on other claims and counterclaims, but the trial court denied those motions. Only the parties' cross-motions for summary judgment on BFLP's first claim for relief, based on the interpretation and effect of the 2010 Lease, are at issue in this appeal.

the trial court, review the summary judgment record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Id.* at 164.

B. *Analysis*

The question in this case is whether paragraph 1 of the 2010 Lease created a restrictive covenant running with the two parcels subsequently transferred to BFLP. To create a covenant running with the land and binding on successors, four requirements must be met:

> "'(1) there must be privity of the estate between the promisor and his successors; (2) the promisor and promisee must intend that the covenant run; (3) the covenant must touch and concern the land of the promisor; and (4) the promisee must benefit in the use of some land possessed by him as a result of the performance of the promise.'"

*Nordbye v. BRCP/GM Ellington*, 246 Or App 209, 225, 266 P3d 92 (2011), *rev den*, 352 Or 33 (2012) (quoting *Johnson v. Highway Division*, 27 Or App 581, 584, 556 P2d 724 (1976), *rev den*, 277 Or 99 (1977) (emphasis omitted by *Nordbye*)). However, for purposes of summary judgment, we understand the trial court's ruling, and BFLP's arguments, to turn on the second element—*i.e.*, whether the restrictive covenant in the 2010 Lease was intended to run with land that included Parcel 1 and Parcel 3, or, instead, was intended to burden the original promisors, Butler Brothers and Butler Ranch.

In determining the intention and effect of the restrictive covenant, we first examine the text of the disputed provision in the context of the 2010 Lease as a whole, along with any evidence of the circumstances in which that lease was formed. *See* ORS 42.240 ("In the construction of an instrument the intention of the parties is to be pursued if possible."); ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."); *Kramer v. The Dalton Co., LLC*, 235 Or App 494, 498, 234 P3d 1008 (2010) ("Our task, then, is to determine the correct meaning of the covenant language, using the method described in *Yogman v. Parrott*,

325 Or 358, 937 P2d 1019 (1997)."); *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006) (following *Yogman*, "the trial court can properly consider the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract"). If our review of the text, context, and circumstances of formation demonstrates only one plausible interpretation of the restrictive covenant, "then our analysis is complete and we give the appropriate effect to the parties' intentions"—*i.e.*, we construe the restrictive covenant as a matter of law. *Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 332, 142 P3d 1044 (2006) (describing *Yogman* analysis). On the other hand, if the covenant remains ambiguous after that review, summary judgment is not appropriate unless there are no factual disputes regarding relevant extrinsic evidence. *Copeland Sand & Gravel v. Estate of Angeline Dillard*, 267 Or App 791, 797, 341 P3d 187 (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015) ("As a general rule, summary judgment is not appropriate in a contract dispute if the terms are ambiguous.").

Starting with the relevant text, the restrictive covenant in paragraph 1 of the 2010 Lease gives Knife River an exclusive right to mine on the Removal Premises and, "[i]n addition," gives Knife River exclusive mining rights "from the balance of Butler Ranch, Inc. and Butler Brothers, LLC land adjacent to the Removal Premises during the term of this lease." There does not appear to be any dispute that, at the time the 2010 Lease was formed, Parcel 1 and Parcel 3 were owned by Butler Ranch and Butler Brothers and are "adjacent to the Removal Premises." However, according to BFLP, the fact that the lease refers only to "Butler Ranch, Inc. and Butler Brothers, LLC land"—as opposed to describing the adjacent land by tax lot—is significant. BFLP argues that such phrasing, in contrast to the references to specific tax lots that appear in other parts of the lease, indicates the parties' intent to burden Butler Ranch and Butler Brothers, not particular land.

We are not persuaded that the restrictive covenant must be read so narrowly as a personal covenant, given the 2010 Lease as a whole and the circumstances

in which it was formed. The 2010 Lease, by its own terms, was intended to replace and supersede the 1996 "Original Lease Agreement." That Original Lease Agreement, which is in the summary judgment record, includes a very similarly worded restrictive covenant, which states, "In addition, Lessee shall have the exclusive right to mine rock, sand and gravel and by-product created therefrom from the balance of Butler Ranch, Inc., and Richard and Shirley Butler land adjacent to the above-described property during the term of this lease, as Butler Ranch exists on the date hereof whether ownership is in Bulter Ranch, Richard and/or Shirley Butler or any trust or similar entity." The record also includes a memorandum of lease that was recorded in 1998, pursuant to the Original Lease Agreement. The 1998 memorandum provides that "Lessor has Leased to Lessee and Lessee has leased from Lessor that certain property located in Crook County, Oregon described in Exhibit A attached hereto by this reference and incorporated herein." (Underscoring in original.) It then states, "The Property is located within and is a portion of the real property legally described in Exhibit B hereto." (Underscoring in original.) Exhibit B, in turn, provides a legal description of property that includes the parcels later transferred to BFLP.

Given those circumstances of formation, it is plausible that the restrictive covenant in the 2010 Lease was drafted in much the same way as the earlier lease, using the phrase "balance of Butler Ranch, Inc. and Butler Brothers, LLC land adjacent to the Removal Premises" with a mutual understanding of exactly what land that was, and with the expectation that a legal description for that specific land would follow in a memorandum of lease. That explanation of the text is bolstered contextually by paragraph 31 of the 2010 Lease, which contemplates that "a Memorandum of this Agreement, in a form acceptable to Lessor and Lessee, may be recorded in the deed records of the county in which the property is located at the option of Lessee."

For those reasons, we are not persuaded that the reference to adjacent land in paragraph 1 necessarily refers to a personal covenant as opposed to a covenant that runs with the land. The covenant text is simply ambiguous in that respect.

Moreover, contrary to the trial court's reasoning, the ambiguity is not resolved by the absence of the word "successors" in the 2010 Lease. As set forth above, the court ruled that "[t]he lease itself states that the restrictive covenant shall be binding upon heirs, personal representatives and assigns of the parties. But it doesn't include the term 'successors,' and restrictive covenants are not favored in law." The absence of the word "successors" does not have the legal significance ascribed by the trial court, as demonstrated by the Supreme Court's decision in *Huff v. Duncan*, 263 Or 408, 502 P2d 584 (1972).

In *Huff*, the court considered whether a covenant in a property agreement that imposed building restrictions "is binding upon the successors in title." 263 Or at 411. As for the requirement that "the parties to the promise intend that the promisor's successors in title be bound," the court explained:

"This requirement is met in the present case. The Real Property Agreement provides that the promisors 'their heirs and assigns' agree that the property retained was to be restricted. As 5 Restatement, Property (Servitudes), § 531, p 3197 (1944) explains, 'If the promise in terms purports to bind them [promisor's successors in title] by the use of such words as 'successors' *or* 'assigns', little question can arise as to the existence of the necessary intention.'"

263 Or at 412 (emphasis added; footnotes omitted). In a footnote following that paragraph, the Supreme Court cited cases and an Oregon law review article addressing the use of the word "assigns" in written instruments, including *Brown v. Southern Pacific Co.*, 36 Or 128, 58 P 1104 (1889). In *Brown*, the court explained:

"The statute [regarding conveyances, Hill's Ann Laws Or § 3005] not having prescribed that the word 'assigns,' or other words of like import, shall be necessary to make a covenant run with the land, the omission of such words from a deed by which a right is connected with the dominant estate, or an obligation inheres in the servient estate, does not necessarily evidence an intention that the clause conferring the right or imposing the burden is a condition personal to the party charged with its performance."

*Id.* at 133.

In short, Oregon law does not require the use of particular words, such as "successors," to evidence an intention that a covenant run with the land; and, in fact, a reference to "assigns" has been sufficient to evidence that intention, even in the absence of the word "successors." *Huff*, 263 Or at 412-13; *accord Black's Law Dictionary* 136 (9th ed 2009) (equating "assigns" and "assignees," defining "assignee" as "[o]ne to whom property rights or powers are transferred by another," and explaining that "[u]se of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity"). Thus, the trial court erred in concluding that the absence of the term "successors" meant, as a matter of law, that the covenant was personal. For that reason, and the others stated above, we reverse the grant of summary judgment in favor of BFLP.[3]

Last, we briefly address Knife River's argument that the court erred in denying its cross-motion. According to Knife River, "[i]t is arguable that the exact land to be bound by the restrictive covenant is not clear by examining the four corners" of the 2010 Lease, but "the exact parcels to be burdened by the 2010 lease covenant can be legally established by a subsequent and consistent memorandum of lease"—in this case, the 2012 Memorandum that was recorded in the midst of the parties' dispute. A detailed recounting of the competing evidence concerning the 2012 Memorandum would not benefit the bench, the bar, or the public. Suffice it to say that there are genuine issues of material fact regarding the circumstances in which that 2012 Memorandum was drafted and recorded, and the trial court correctly denied Knife River's cross-motion for summary judgment.

Reversed and remanded.

---

[3] We note that the trial court referred to the fact that restrictive covenants are not favored. *See Yogman*, 325 Or at 366 (describing and adhering to the maxim that restrictive covenants are to be construed strictly). However, maxims of construction apply only after the consideration of competing extrinsic evidence to resolve the ambiguity—something that remains to be done on remand in this case.