Argued and submitted February 13, reversed and remanded for entry of
declaratory judgment in favor of defendant October 29, 2008

Mike LEAHY
and Julie Leahy,
husband and wife,
*Plaintiffs-Respondents,*

*v.*

POLARSTAR DEVELOPMENT, LLC,
*Defendant-Appellant.*

Deschutes County Circuit Court
05CV0592ST; A133144

195 P3d 919

George W. Kelly argued the cause and filed the briefs for appellant.

John A. Berge argued the cause for respondent. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Schuman, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant appeals a declaratory judgment stating that the conditions, covenants, and restrictions (CCRs) attached to a plat of land in Deschutes County preclude further subdivision or partition of the platted land, and an injunction enjoining defendant and future owners from seeking subdivision or partition of the land. Defendant seeks a reversal of that judgment, arguing that (1) the trial court erred by concluding that the CCRs are ambiguous as to the ability to subdivide or partition the affected property, and (2) even if the CCRs are ambiguous, the trial court erred in resolving that ambiguity in plaintiff's favor based on relevant extrinsic evidence. We agree with defendant that the CCRs unambiguously permit further subdivision or partition of the property, and, thus, we need not reach its second assignment of error. Consequently, we reverse the trial court's declaratory judgment and injunction and remand to enter judgment for defendant.

The following facts are undisputed. Walsh, who is not a party to this action, originally owned the 5.41-acre parcel of land at issue, which he partitioned in 1998 into one 3.41-acre parcel (Parcel 1) and two single-acre parcels (Parcels 2 and 3). Walsh recorded with Deschutes County the original plat of the subdivision of land and CCRs pertaining to those parcels.

Defendant now owns Parcel 1.[1] In 2005, it sought to partition Parcel 1 into three parcels; following approval of that partition, defendant planned to subdivide one of those parcels into an 11-lot subdivision. Plaintiffs, who own Parcel 2, received notice of defendant's intention to subdivide Parcel 1 and negotiated with defendant without success. They then sought a declaratory judgment that the CCRs precluded subdivision or partition of Parcel 1 and an injunction enjoining defendants and subsequent owners from seeking to partition the parcel.

---

[1] The defendants in the original action, the Adkinses, sold Parcel 1 and their appeal rights to defendant after they filed their appeal. For simplicity, we attribute to defendant the Adkinses' actions regarding Parcel 1 that predated the sale of property to defendant.

The trial court followed the method for interpreting restrictive covenants laid out in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). It first concluded that the CCRs were ambiguous regarding whether they permitted further subdivision of Parcels 1, 2, and 3. It then resolved that ambiguity by considering extrinsic evidence and ultimately concluded that the CCRs precluded defendant from subdividing Parcel 1. Consequently, the court entered a declaratory judgment in plaintiffs' favor and enjoined defendant and future owners from seeking to subdivide or partition the property subject to the CCRs.

On appeal, defendant argues that the trial court erred by entering the declaratory judgment and the injunction. It asserts that it should prevail because the CCRs unambiguously permit further subdivision of its property. Alternatively, defendant argues that, even if the CCRs are ambiguous, the relevant extrinsic evidence resolves the ambiguity in its favor. Plaintiffs respond that, at the first level of analysis, the CCRs are ambiguous as to the ability to subdivide or partition the property, and that the relevant extrinsic evidence offered at trial resolves the ambiguity in their favor.

■ ■ When interpreting CCRs, we follow the three-step method laid out in *Yogman*. First, we look to the text of the disputed provisions in the context of the whole document. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). If the meaning is clear, our analysis ends. *Yogman*, 325 Or at 361. If we determine that the restrictive covenants are ambiguous, we then examine extrinsic evidence of the contracting parties' intent to resolve that ambiguity. If the ambiguity cannot be resolved after considering that evidence, we turn to maxims of construction. *Id.* at 363-64. We may also examine extrinsic evidence for the purpose of determining whether there is ambiguity. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317-18, 129 P3d 773, *rev den*, 341 Or 366 (2006).

■ Thus, our first task is to determine whether the CCRs unambiguously permit further division of Parcels 1, 2, and 3. CCRs are interpreted as contractual provisions. *Yogman*, 325 Or at 361. Whether the terms of a contract are

ambiguous is a question of law. *Eagle Industries, Inc.*, 321 Or at 405. In this step of the analysis, we consider the document as a whole, with emphasis on the disputed provisions. *Id.* A contractual provision is ambiguous if it has no definite meaning or is capable of more than one reasonable interpretation. *See Yogman*, 325 Or at 362-63; *Andrews v. Sandpiper Villagers, Inc.*, 215 Or App 656, 664, 170 P3d 1098 (2007).

■        Accordingly, we set forth the provisions at issue. The CCRs begin with general statements that the restrictions apply to "certain real property" in Deschutes County, "hereinafter referred to as 'Said Property.' " The text then refers to Exhibit I, appended to the CCRs, which briefly identifies "Parcels 1, 2, and 3" by referring to the specific partition plat that Walsh filed and describing the property's general location. Further, Article I of the CCRs defines terms used throughout the CCRs and provides, in part:

> "1.1    'Said Property' shall mean and refer to that certain real property hereinbefore described and such additions thereto as may be hereafter brought within the jurisdiction of the Association by recorded Declarations in the manner hereinafter set forth.

> "1.2    'Lot' shall mean any numbered plot of land shown upon any recorded subdivision or partition plat of said property or subdivided or partition parcels of any such plat."

Article II then sets forth the restrictions on the use of the property subject to the CCRs. The relevant provisions of that Article include:

> "2.1    Each lot shall be used for single family residential purposes only.

> "* * * * *

> "2.29    No owner shall occupy, use or permit his lot or any part thereof to be used for any purpose other than a private residence for the owner, his family, or his guests, except that each owner shall be permitted to rent the unit when he is not in occupancy."

The parties focus on paragraph 1.2 and its definition of "lot." Defendant argues that "lot," by its definition, includes two different things: *both* "any numbered plot of

land shown upon any recorded subdivision or partition plat of said property,"—*i.e.*, Parcels 1, 2, and 3 in Walsh's original plat—*and* any "subdivided or partition parcels" of Parcels 1, 2, or 3. In other words, in defendant's view, the second "or" in the definition clearly means "alternatively," with the preceding text indicating Parcels 1, 2, and 3, and subsequent text indicating any subdivision or partition of Parcels 1, 2, and 3.

Plaintiffs acknowledge that defendant's reading is plausible. They argue, however, that the second "or" introduces ambiguity, because it could mean "in other words," with the text following "or" simply redefining Parcels 1, 2, and 3. Accordingly, plaintiffs argue, "lot" would be synonymous with "parcel," and, given that paragraphs 2.1 and 2.29 limit lots (or parcels, by plaintiffs' definition) to be used for the owner's single family residence, the CCRs prohibit further subdivision of Parcels 1, 2, and 3.

The problem with plaintiffs' argument is that it ignores the grammatical structure of paragraph 1.2. The first part of paragraph 1.2 defines "lot" as "any numbered plot of land shown upon *any recorded subdivision or partition plat of said property*." (Emphasis added.) "Said property" was defined earlier in the CCRs as the property comprising Parcels 1, 2, and 3; thus, "any numbered plot of land shown upon any recorded subdivision or partition plat of" the property comprising Parcels 1, 2, and 3 are those three parcels.[2] We look to the remainder of the sentence, "or subdivision or partition of *any such plat*." (Emphasis added.) The adjective "such," as used here, means "having a quality already or just specified—used to avoid repetition of a descriptive term." *Webster's Third New Int'l Dictionary* 2283 (unabridged ed 2002). Thus, the phrase "any *such* plat" refers the reader back to parallel phrasing in the first part of the definition, "any *recorded subdivision or partition* plat" of Parcels 1, 2, and 3. Given that the definition in the second part of the sentence refers back to—and modifies—the definition in the first part of the sentence, it must mean a different thing than the

---

[2] Even if "said property" referred instead to Parcels 1, 2, and 3 individually, rather than the aggregate whole, we would reach the same result. The first definition then would refer to any "plot of land shown upon any recorded subdivision or partition plat" of either Parcel 1, 2, or 3; the second definition would refer to any further subdivision or partition of those partitions of Parcels 1, 2, or 3.

first definition. Here, it can *only* mean that further subdivision or partition of Parcels 1, 2, and 3 is not only permitted but anticipated.

Accordingly, we agree with defendant's interpretation of paragraph 1.2, to the extent that it clearly indicates that subdivision or partition of Parcels 1, 2, and 3 is permissible. Plaintiff's construction is not tenable, and we see no other sensible interpretation of the disputed provision in light of the other provisions of the CCRs. In that regard, the "one residence per lot" restrictions in paragraphs 2.1 and 2.29 do not contradict our conclusion. Those paragraphs simply limit the use of each lot to residential use—as opposed to commercial or industrial use—as a single-family home that owners may occupy or rent. Nothing in those provisions precludes owners from partitioning their existing parcels or lots and selling those lots to a new owner who then builds or occupies a single-family residence on that lot. Further, nothing in the other provisions in the CCRs indicates that subdivision or partition of the lots is forbidden. Thus, the CCRs are unambiguous to the extent that they permit further subdivision and partition of the property to which they apply, and we need not examine extrinsic evidence or maxims of construction.

We therefore conclude that the trial court erred in concluding that the CCRs were ambiguous as to the permissibility of further subdivision or partition of Parcels 1, 2, and 3. Accordingly, we reverse.

Reversed and remanded for entry of declaratory judgment in favor of defendant.