Argued and submitted September 11, 2020; general judgment affirmed, portion of supplemental judgment awarding $11,542 in attorney fees vacated and remanded, otherwise affirmed June 29, 2022

HOMES ASSOCIATION OF CEDAR HILLS,
an Oregon nonprofit corporation,
*Plaintiff-Appellant,*

*v.*

Kenneth Todd CRAIG
and Susan E. Craig,
*Defendants-Respondents.*

Washington County Circuit Court
17CV12196; A167119

515 P3d 379

Plaintiff, the Homes Association of Cedar Hills (HACH), appeals from a general judgment granting defendants' motion for summary judgment and denying HACH's motion for summary judgment, and a supplemental judgment awarding defendants attorney fees. The dispute arises out of $925 in attorney fees HACH attempted to collect from defendants, who are homeowners residing in the HACH subdivision. On appeal, the issue is whether defendants' submission of a permit application without signatures from their neighbors constituted a violation of the covenants, conditions, and restrictions (the Declaration) such that HACH was entitled to attorney fees under Article X of the Declaration. *Held*: After examining the text of Article X in the context of the Declaration as a whole, the Court of Appeals concluded that both parties presented plausible interpretations of the Declaration and therefore it was ambiguous. Because the parties did not submit any extrinsic evidence in the summary judgment record about the drafting of the Declaration, the court used legal maxims of construction to conclude that the trial court did not err in denying HACH's motion for summary judgment and in granting defendants' motion for summary judgment. The trial court did, however, err in awarding $11,542 over the amount in defendants' original attorney fee statement without first holding a hearing as requested by HACH.

General judgment affirmed; portion of supplemental judgment awarding $11,542 in attorney fees vacated and remanded; otherwise affirmed.

Eric Butterfield, Judge.

Eli D. Stutsman argued the cause and filed the briefs for appellant.

Christine Coers-Mitchell argued the cause for respondents. Also on the brief were Johnston A. Mitchell, and Coers Mitchell Law LLC.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

General judgment affirmed; portion of supplemental judgment awarding $11,542 in attorney fees vacated and remanded; otherwise affirmed.

**POWERS, J.**

Plaintiff, the Homes Association of Cedar Hills (HACH), appeals from a general judgment granting defendants' motion for summary judgment and denying HACH's motion for summary judgment, and a supplemental judgment awarding defendants attorney fees. The dispute in this case arises out of $925 in attorney fees HACH attempted to collect from defendants, who are homeowners residing in the HACH subdivision. More specifically, the issue is whether those attorney fees were incurred for the enforcement of, or to restrain a violation of, the applicable covenants, conditions, and restrictions (CCRs) surrounding the building of a fence and wall that defendants constructed on their property. On appeal, HACH challenges the trial court's denial of its motion for summary judgment and grant of defendants' motion and further contends that the trial court erred in awarding attorney fees to defendants. HACH argues that the trial court erred in awarding defendants attorney fees in two respects: (1) by determining the amount of attorney fees without considering the objective reasonableness of the parties' efforts to engage in an alternative dispute resolution (ADR), and (2) by allowing an additional award of $11,542 in attorney fees without holding a hearing as required by ORCP 68. For the reasons explained below, we conclude that the trial court did not err in granting defendants' motion for summary judgment and in denying HACH's motion but that it did err in awarding defendants an additional $11,542 in attorney fees without conducting a hearing. We reject HACH's argument regarding the objective reasonableness of the parties' conduct without discussion. Accordingly, we affirm the general judgment and vacate the supplemental judgment in part and remand for further proceedings.

Defendants' home is in the HACH subdivision in Washington County and is subject to CCRs detailed in the Restated Declaration of Restrictions of Homes Association of Cedar Hills (the Declaration or CCRs). Article V(a)(1) of the Declaration provides, in part:

> "No Dwelling House, garage, shed, outbuilding, fence, pool, driveway, runway, walkway, ground level slab, wall or

other structure and, except as to Plat 9-Duplex and Forest Hills 5A, no hedge, shall be placed, erected, maintained or constructed upon any portion of the Property, and no alterations which would materially alter the exterior appearance of any such structure shall be made, unless a complete set of plans and specifications therefor, including the exterior color scheme, together with a plot plan indicating the exact location on the Building Site of the proposed building, other structure or hedge, shall have been submitted to and approved in writing by the Association and a copy of such plans and specifications as finally approved deposited for permanent record with the Association."

In February 2016, defendants decided to tear down their existing fence and build a new fence and retaining wall to enhance privacy on their property. Defendants did not submit a set of plans and specifications to HACH prior to starting construction. As a result, HACH sent defendants a letter informing them that they were in violation of Article V and requested that defendants "[s]top all exterior construction immediately until the permit application has been fully submitted, reviewed and approved in writing by the Association." (Emphasis omitted.)

In March 2016, defendants attended a HACH board meeting and explained that they did not submit a permit application because they did not agree with certain language in the permit application. The board responded that it would not be able to address defendants' request to remove the language from the permit application until the next executive session. The board requested that defendants, in the meantime, stop all construction to the fence and wall, and defendants agreed.

In April 2016, defendants had still not submitted a permit application; therefore, HACH referred the issue to its attorney and authorized its attorney to take action to bring defendants into compliance with the CCRs. As a result, HACH's attorney sent defendants an email seeking to "find a solution to the stalemate which is satisfactory" to defendants and HACH. Defendants and HACH's attorney exchanged several emails regarding the language of the permit application. Eventually, HACH and its attorney

agreed to remove the language defendants objected to in the permit application.[1]

In May 2016, defendants received an email from HACH's attorney with an amended permit application that removed the paragraph that defendants disagreed with. Defendants then submitted a permit application that did not include signatures from defendants' neighbors. HACH's attorney explained to defendants that their permit application was incomplete because it needed signatures from four neighbors. Believing that the signatures were not necessary because part of their property bordered a park, defendants asked for further clarification. HACH's attorney explained the purpose of the signature requirement, and when HACH did not receive an updated permit application with the required neighbors' signatures, HACH's attorney sent a demand letter to defendants requesting that they submit a properly completed permit application within 10 days and pay $925 in attorney fees within 31 days. The demand letter further explained that the signatures were important because they helped HACH "fulfill its responsibility under [Article] V(a)(2)." Under that article, HACH may withhold approval of a permit for noncompliance with a specific CCR in the Declaration and it also may withhold approval based on HACH's determination that a proposed change would be "inharmonious" with the general plan of improvement or with the neighboring properties. Specifically, Article V(a)(2) provides:

> "The approval of said plans and specifications may be withheld not only because of their noncompliance with any of the specific conditions, covenants and restrictions contained in this Declaration, but also because of the dissatisfaction of the Association with any or all other matters or things which, in the judgment of the Association, would render the proposed structure or improvement inharmonious with the general plan of improvement of the Property or neighboring properties or with the structures or improvements erected on other Buildings Sites in the immediate vicinity of the Building Site upon which said structure or improvement is proposed to be erected."

---

[1] Neither the permit application nor the exact language that defendants objected to are part of the record.

In August 2016, defendants resubmitted a fully complete permit application form—with the required signatures—but did not pay the requested attorney fees.

In March 2017, HACH filed suit against defendants alleging that defendants' failure to comply with the CCRs caused HACH to incur $1,197.50 in attorney fees. HACH argued that, under Article X of the Declaration, it was entitled to reasonable attorney fees incurred in enforcing the Declaration. Article X provides:

> "In the event the Association employs an attorney to enforce or restrain a violation of this Declaration, or any provisions thereof, even if no suit or action is commenced and in any bankruptcy proceeding in connection therewith, or to collect any money due hereunder, or in connection with, or to foreclose a lien, the Association shall be entitled to its attorneys' fees incurred therewith, and in any legal or equitable proceedings by the Association or the owner or owners of any portion of the Property, or their and each of their legal representatives, heirs, successors and assigns, for the enforcement or to restrain a violation of this Declaration or any provisions hereof, the losing party shall pay to the prevailing party such attorneys' fees as the trial court may deem reasonable in such suit or action, and, if any appeal is taken, the prevailing party's reasonable attorneys' fees on appeal. All such charges shall constitute a lien on the whole Building Site with respect to which they were incurred in accordance with the provisions of Article VIII of this Declaration. However, nothing contained in this Declaration shall be deemed to vest or reserve in the Association any right of reversion or re-entry for breach or violation of any one or more of the provisions hereof."

After some discovery, HACH moved for summary judgment, and defendants filed a cross-motion for summary judgment.

In its motion for summary judgment, HACH argued that, after "continued noncompliance," it was well within its right to refer defendants' violations of the Declaration to counsel for enforcement. In their memorandum opposing HACH's motion for summary judgment, defendants remonstrated that, because HACH did not enforce the CCRs uniformly, its arbitrary, capricious, and self-serving enforcement of the Declaration barred its claim. Defendants further

asserted that Article X did not justify charging them attorney fees because HACH's "attorney did nothing to enforce or restrain" defendants; rather, defendants "had already agreed to stop work and file the permit when the confusing and unnecessary clause [in the permit application] had been removed." Additionally, defendants argued that HACH's insistence on defendants obtaining signatures from their neighbors was not a requirement in the Declaration and, thus, the attorney fees related to that issue were not defendants' responsibility.

Defendants made similar arguments in their cross-motion for summary judgment but narrowed the basis of their motion. Specifically, defendants' motion stated:

> "The legal basis for this Motion is very narrow, and relates only to the undisputed fact that the HACH attorney did not take any action to 'constrain' or 'compel' the Defendants to do anything. As a result, under prior case law, the HACH cannot prove entitlement for their attorney fees as a matter of law."

(Underscoring omitted.) In support of their argument, defendants emphasized that HACH "never claimed that the wall and fence were in violation of the CC&R's specifications, and in fact, acknowledged that the design and construction were perfectly suitable." (Boldface omitted.) HACH's response to defendants' motion for summary judgment contained similar arguments to those made in its own motion.

After the parties submitted additional briefing, the trial court held oral argument and granted defendants' motion for summary judgment and denied HACH's motion. Defendants submitted a proposed order, and HACH objected. At a subsequent hearing to address the summary judgment order and various other motions, HACH objected to the proposed order, arguing that the order did not reflect the reasons why the court granted defendants' motion for summary judgment or denied HACH's motion for summary judgment. In response, the trial court explained that it thought that HACH was "jerking [defendants] around," and ultimately granted defendants' motion for summary judgment. The parties then litigated whether attorney fees should be awarded.

Defendants' initial statement of attorney fees sought an award of $34,220. HACH filed objections to that amount and requested a hearing. The trial court held a hearing and took the matter under advisement. While the matter was under advisement, the court encouraged the parties to settle the matter and, if they were unable to settle, the court invited each party to submit proposed findings of fact and conclusions of law. The parties were unable to settle, and defendants submitted a proposed supplemental judgment seeking $45,762 in attorney fees (or $11,542 more than they had sought in their initial statement of attorney fees). Although HACH objected, moved to strike, and requested a hearing on the inclusion of $11,542 over the original attorney fee statement, the trial court did not hold a hearing and signed defendants' proposed supplemental judgment. HACH subsequently initiated this timely appeal.

On appeal, the parties largely renew their arguments before the trial court. HACH also assigns error to the trial court's award of reasonable attorney fees, arguing that the court should have considered the objective reasonableness of the parties' respective efforts to engage in settlement negotiations and that the court should have held a hearing as HACH had requested. We begin with the parties' dispute about the interpretation of the Declaration and conclude that the trial court did not err in granting defendants' summary judgment motion.

In an appeal arising from cross-motions for summary judgment, "both motions are subject to review if the parties have assigned error to the trial court's rulings on them." *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 276, 325 P3d 49, *rev den*, 355 Or 879 (2014). For each motion, "summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law." *Butler Family LP v. Butler Brothers, LLC*, 283 Or App 456, 462, 388 P3d 1135 (2017); *see also* ORCP 47 C. In determining whether there is a genuine issue of material fact, we review the summary judgment record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Butler Family LP*, 283 Or App at 463.

Here, the parties' arguments raise an issue of contract interpretation. To interpret a contractual provision, including a restrictive covenant, we employ the methodology outlined in *Yogman v. Parrott*, 325 Or 358, 361-62, 937 P2d 1019 (1997). Using that methodology:

> "First, we look to the text of the disputed provisions in the context of the whole document. If the meaning is clear, our analysis ends. If we determine that the restrictive covenants are ambiguous, we then examine extrinsic evidence of the contracting parties' intent to resolve that ambiguity. If the ambiguity cannot be resolved after considering that evidence, we turn to maxims of construction. We may also examine extrinsic evidence for the purpose of determining whether there is ambiguity."

*Leahy v. Polarstar Development, LLC*, 223 Or App 373, 376, 195 P3d 919 (2008) (internal citations omitted); *see also Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 315-17, 129 P3d 773, *rev den*, 341 Or 366 (2006) (examining at the first step—in addition to the text and context—evidence of the circumstances underlying the contract formation, if provided by the parties). In a summary judgment posture, a "party is entitled to summary judgment only if the terms of the contract are unambiguous on their face." *Adair Homes, Inc.*, 262 Or App at 277. A provision of a contract "is ambiguous if it has no definite significance or is capable of more than one plausible—that is, sensible and reasonable—interpretation." *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006). As such, if "a contract is ambiguous, and there is relevant competing extrinsic evidence to resolve the ambiguity, ascertaining the meaning of the contract involves a question of fact and the dispute over the contract's meaning cannot be resolved on summary judgment." *Adair Homes, Inc.*, 262 Or App at 278. However, if there is no relevant competing extrinsic evidence, we apply established maxims of construction to determine the meaning of the disputed provisions. *Cryo-Tech, Inc. v. JKC Bend, LLC*, 313 Or App 413, 423-24, 495 P3d 699 (2021), *rev den*, 369 Or 211 (2022); *see also Dial Temporary Health Service v. DLF Int'l Seeds*, 255 Or App 609, 612, 298 P3d 1234 (2013) ("[I]t is the existence of competing extrinsic evidence—and the triable factual issue that the evidence

creates—that, as a general rule, makes the resolution of the meaning of an ambiguous contract on summary judgment inappropriate, not the existence of an ambiguity itself.").

In this case, we are tasked with interpreting Article X of the Declaration, which allows HACH to collect attorney fees if it "employs an attorney to enforce or restrain a violation of [the] Declaration." Before examining the language in the Declaration, we pause briefly to note what is not at issue in this case. First, there is no dispute that defendants violated Article V of the Declaration by beginning construction on their property without submitting a permit application to HACH. Second, notwithstanding that violation, this dispute does not concern the attorney fees expended to inform defendants that they had violated Article V, nor does this dispute concern the work done by HACH's attorney to negotiate the language in the permit application after defendants expressed objections to some provisions. HACH acknowledged that it considered the work done by its attorney up until May 2016 (when defendants first submitted a permit application) to be "attorney fees incurred [as] a cost of doing business and did not seek those fees from Defendants." Therefore, this action concerns the work done by HACH's attorney only after defendants submitted a permit application that lacked their neighbors' signatures.

With that in mind, we turn back to the issue presented in this case, which is whether defendants' submission of a permit application without signatures from their neighbors constitutes a "violation of [the] Declaration" such that HACH was entitled to attorney fees under Article X for enforcing or restraining the Declaration. After examining the text of Article X in the context of the Declaration as a whole, we conclude that both parties present plausible interpretations of the Declaration. That is, as we explain below, Article X of the Declaration can plausibly be read either as allowing HACH to collect attorney fees for a violation implicitly outlined in the Declaration or as allowing HACH to collect attorney fees only for a violation explicitly outlined in the Declaration.

Under HACH's proposed interpretation, because Article V requires that a homeowner's complete set of plans

must be "submitted to and approved in writing by the Association," defendants were in violation of Article V until their permit application was approved by HACH. HACH further points out that Article V(a)(2) provides that the "approval of said plans and specifications may be withheld not only because of their noncompliance with any of the specific conditions" in the Declaration, "but also because of the dissatisfaction of the Association with any or all other matters or things which, in the judgment of the Association, would render the proposed structure or improvement inharmonious with the general plan of improvement of the Property or neighboring properties."[2] Therefore, because HACH has authority to place conditions on a permit application—such as requiring neighbors' signatures—and an approved permit application is required under the Declaration, HACH asserts that its attorney's work to get defendants to obtain the neighbors' signatures constituted enforcement of the Declaration and, thus, merited attorney fees. Read in context with other provisions in the Declaration, HACH offers a plausible reading of Article X.

However, defendants' proposed interpretation is also plausible. Defendants assert that, because the Declaration does not explicitly contain a signature requirement, submitting a permit application without signatures did not violate the Declaration. Thus, because there was no violation of the Declaration, HACH's attorney was not acting to "enforce" the Declaration and would not be entitled to attorney fees

---

[2] Defendants argue that we should not consider HACH's argument regarding Article V(a)(2) and (a)(4), because it was not preserved by the arguments in its motion for summary judgment, in its reply, or in response to defendants' motion for summary judgment. Although defendants are correct that HACH did not articulate the argument in those specific documents, HACH did develop the argument in its supplemental point of authorities, which the trial court allowed. HACH further referenced the argument in the hearing on the parties' cross-motions for summary judgment:

"And again, in this case, it's important to recall that there was a violation and the [defendants] were in violation until there was a proper application submitted to the association and the association was then in a position to approve what had already been done."

Therefore, we conclude that the argument was adequately raised before the trial court such that the court and defendants had an opportunity to consider HACH's argument. *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (explaining that the touchstone of the preservation requirement is procedural fairness to the parties and the trial court).

under Article X. Put differently, although the Declaration allows HACH to place conditions on the approval of a permit application, Article X allows HACH to collect attorney fees only if it "employs an attorney to enforce or restrain a violation of [the] Declaration." Because the Declaration does not require neighbors' signatures, any work done by HACH's attorney to obtain a permit application with signatures, did not amount to enforcing or restraining a violation of the Declaration. Like HACH's interpretation, we similarly conclude that defendants' proposed construction of Article X is also facially plausible.

Because both parties' interpretations are plausible, we conclude that the Declaration is ambiguous. Generally, when a contract is ambiguous, we would then turn to any extrinsic evidence submitted by the parties to help resolve the ambiguity. *See Leahy,* 223 Or App at 376 (explaining that, "[i]f we determine that the restrictive covenants are ambiguous, we then examine extrinsic evidence of the contracting parties' intent to resolve that ambiguity"); *see also Paragano v. Gray,* 126 Or App 670, 683, 870 P2d 837 (1994) (observing that extrinsic evidence of the parties' intent "includes their negotiations—what one party said to another—*** not their undisclosed thoughts or subjective beliefs").

In this case, however, the parties did not submit any extrinsic evidence in the summary judgment record about the drafting of the Declaration. In the absence of evidence of the parties' intent, resolution of the ambiguity requires the use of legal maxims of construction. *See Dial Temporary Help Service v. DLF Int'l Seeds,* 252 Or App 376, 381, 287 P3d 1202 (2012), *adh'd to on recons,* 255 Or App 609, 298 P3d 1234 (2013) (so stating). Similar to the situation in *Dial,* the appropriate maxim in this case is to construe the Declaration against the party that drafted it, which in this case is HACH. *See Berry v. Lucas,* 210 Or App 334, 339, 150 P3d 424 (2006) (explaining that "it is a basic tenet of contract law that ambiguous language in a contract is construed against the drafter of the contract"). Applying that maxim, it follows that the Declaration does not permit HACH to recover attorney fees because attorney fees are authorized only when its attorney acts "for the enforcement

or to restrain a violation of this Declaration or any provisions hereof." In short, we conclude that HACH's attorney's actions after defendants submitted a permit application that lacked their neighbors' signatures did not constitute enforcing the Declaration for the purposes of Article X. Accordingly, the trial court did not err in denying HACH's motion for summary judgment and in granting defendants' motion for summary judgment.

Turning to the challenge to the attorney fee award, HACH first contends that the trial court erred when it awarded $34,220 of the total proposed $45,762 in attorney fees because it failed to consider the objective reasonableness of the parties' efforts to engage in ADR. We reject that argument without discussion. HACH further asserts that the trial court erred in awarding $11,542 over the amount in defendants' original attorney fee statement, without first holding a hearing as requested by HACH. Although the trial court held a hearing on defendants' initial request for $34,220 in attorney fees and took that matter under advisement, the trial court did not hold a hearing after defendants sought additional attorney fees and HACH objected. Defendants concede that the trial court should have held a hearing on HACH's objection. We accept defendants' concession and, accordingly, we vacate the portion of the supplemental judgment awarding $11,542 in attorney fees and remand for further proceedings. *See* ORCP 68 C(4)(e)(i) ("If a hearing is requested, the court, without a jury, shall hear and determine all issues of law and fact raised by the objection."); *Bradach and Bradach*, 203 Or App 477, 479, 124 P3d 1288 (2005) (vacating and remanding supplemental judgment for attorney fees where a trial court failed to hold a hearing pursuant to ORCP 68 C).

General judgment affirmed; portion of supplemental judgment awarding $11,542 in attorney fees vacated and remanded; otherwise affirmed.